JACK KAY, Appellant, *v.* LEONID TANKEL, Respondent.

First Department, March 20, 1962.

*Marvin Usdin* for appellant.

*Harold Craske* for respondent.

*Per Curiam.* The trial of this case began with a jury on Tuesday, November 24, 1959. The following Thursday was Thanksgiving Day. Just before 1:00 P.M. on Wednesday, the

Judge inquired of the jury "what are your commitments individually if this case has to continue into next week?" Some jurors responded it would be all right; some indicated it would be inconvenient; and one said he had plane tickets for Friday night to take his sick wife away.

The Judge then turned his inquiry to counsel when the following colloquy took place:

The Court: I will pursue that one step further. We have a situation where it is quite evident from the way this case is going it may not be finished before Friday, at the end. Can the lawyers suggest that it is otherwise? Mr. Plaintiff?

Mr. Usdin [attorney for plaintiff-appellant]: I think so, your Honor.

The Court: You think so?

Mr. Usdin: Honestly, I do.

The Court: How long will you be on your examination, cross examination of this witness? I cannot rely on your estimates, because there is so much that you pursue that is either improper or irrelevant or is done carelessly, rather, improperly, and has to be clarified by my intercession, that I can't rely on your estimate. How long do you think you will be, anyway?

Mr. Usdin: I think another two hours or so.

The Court: Two hours? It is now a quarter to one. Luncheon hour is one o'clock. If I take only an hour, it will be two o'clock. You will be with this witness till three o'clock? Is that what you say?

Mr. Usdin: About three-thirty, your Honor.

The Court: What other witnesses do you have?

Mr. Craske [attorney for defendant-respondent]: I have one witness.

The Court: Mr. Craske, I may say to you what I have said to your adversary, and I may say for both of you, I was reading the address of an English jurist the other day who suggested that a judge, above all, must be a gentleman and must be patient. I am only inclined to say that I would like to invite that jurist to come here to try this case and see what he would say afterwards.

Now, having said that, you have how many other witnesses?

Mr. Craske: One or possibly two. I don't think either will detain us too long.

The Court: Will you both stipulate, perhaps, to withdraw this case from the jury and let the Judge decide it alone, so that I can at least do something about the jury commitment? They have been here, they are here, for the second week. Or, will you agree to continue with a jury of less than twelve, if necessary, so that I may excuse those jurors who have to get away?

I will leave it, in the last analysis, to the individual jurors in the discharge of an obligation which is exactly the same as mine, to adjust their inconvenience to the extent of finishing the case.

Now, you have two alternatives, as it appears to me. Either you continue with a jury of less than twelve — you can continue this case and I will decide it — or I will have to declare a mistrial and let you start all over again. You cannot finish the case this week.

Do you want to take a few minutes to discuss it?

If I sit alone, I will sit on Friday.

I am not going to sit here all day Friday and declare a mistrial at four o'clock.

As the case comes to me for trial, after a previous mistrial, because one or both of you were not ready, and as it comes to me at the beginning of this trial, when neither one of you is yet ready, I don't think that either of you, individually or together, are entitled to too much consideration; but, on the other hand, the interest of justice requires that a case be tried fully, even though incompetently.

The court then suggested that counsel go out in the hall and discuss the situation with their clients and advise him. "You have the three alternatives: You can take a mistrial now, you can waive a jury, or I will canvass the jury and see how many of them will be able to continue with this into next week." Plaintiff-appellant's lawyer thought the case might finish on Friday. The court thought it could not. He canvassed the jury again and seemed to have concluded that eleven could finish the case without undue hardship; and then inquired of both sides if they were "willing to continue with eleven jurors?" Counsel on both sides answered affirmatively. The court then remarked to the jury that "As long as we are going to have eleven" how many of them "would rather get away this afternoon or Friday or both? * * * I will try to suit your convenience."

One juror said "I'd rather finish with the case as quickly as possible"; another, apparently referring to the Judge's prior offer to try the case without a jury, put it this way: "Your Honor, could the lawyers call on your original proposition?"

Whereupon the court again directed himself to counsel:

The Court: See whether you are willing to have me decide this case without a jury. Go and talk between yourselves. Maybe that will settle all our problems. Go out in the hall, will you, please? We will sit here and wait for you.

(Counsel retired from the courtroom and then later reentered the courtroom.)

The Court: What do counsel say?

Mr. Craske: There is a difference of opinion. One of us would accept your Honor's services and the other prefers the jury.

The Court: I will declare a mistrial. This case cannot be finished by Friday.

Mr. Craske: Oh, Lord!

The Court: Let me excuse the jury.

Mr. Craske: Your Honor, may we talk about it again?

The Court: I am not accustomed to equivocate. Here I am making decisions. I am not going to sit here for two days of trial and then start all over again, declare a mistrial. You do not have to continue with me.

Some six folios or so of the record are then devoted to a discussion of marked pleadings in which the court rather severely criticized the attorney for appellant for not having properly marked pleadings and for the condition of his bill of particulars, ending "In your case, I make allowances, to a great extent for your seeming maturity." After some further discussion the court declared a mistrial, neither side having moved for any such relief, and discharged the jury.

The court then said to counsel:

All right, the record is closed in this case; so, there is no more to be said. Anything you say to me now is a matter entirely of informality.

You want me to continue with the case?

Mr. Usdin: Yes, your Honor.

The Court: It is now deemed that you waive the jury?
Mr. Usdin: Yes.

The attorney for plaintiff then stated for the record that the parties stipulated to try the case before the court without a jury; and although there appears no specific acquiescence by the attorney for defendant, we assume this is implicit from the record and subsequent proceedings. The court then asked counsel whether they wanted to continue '' Monday morning '', and counsel indicated agreement. Thereupon the court announced: '' Trial continued on December 1st at ten o'clock a.m.''

December 1 was Tuesday; the case was taken up again before the court without a jury and completed in the forenoon of that day; the court thereupon making a decision for defendant dismissing the complaint and a decision for the plaintiff dismissing the counterclaim without prejudice. Plaintiff appeals and argues, among other things, that the Judge's conduct in '' compelling a mistrial so as to force the continuation of the trial before the Court without a jury is an obvious abuse of judicial discretion.''

We think the record demonstrates undue pressure by the Trial Justice upon counsel to waive a jury trial. Judicial pressure in the context of this record is extremely difficult for counsel to resist. We feel impelled to relieve the attorney for plaintiff-appellant from the stipulation to waive trial by jury in the interest of justice and the exercise of discretion. This precludes our determination of the case on its factual and legal merits. Rather, we are required to order a new trial.

The judgment should be reversed on the law and the facts and in the exercise of discretion and a new trial ordered, with costs to abide the event; and counsel on both sides are relieved of their stipulation for nonjury trial.

BREITEL, J. P., VALENTE, STEVENS, STEUER and BERGAN, JJ., concur.

Judgment unanimously reversed, on the law and the facts and in the exercise of discretion and a new trial ordered, with costs to abide the event; and counsel on both sides are relieved of their stipulation for nonjury trial.